FILED
2021 MAR 19 AM 11:45
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **LORI B.,**<br><br>Plaintiff,<br><br>v.<br><br>**ANDREW M. SAUL,**<br>**Commissioner of Social Security,**<br><br>Defendant. | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br><br>**Case No. 2:20-cv-00044-JCB**<br><br><br>**Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Magistrate Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[1]  Before the court is Lori B.'s ("Plaintiff") appeal of Andrew M. Saul's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act[2] and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[3]  The court held oral argument on December 22, 2020,[4] at which Andrew J. Reichardt represented Plaintiff, and Christina J. Valerio represented the Commissioner.  The court has carefully considered the parties' written briefs,

---

[1] ECF No. 14.

[2] 42 U.S.C. §§ 401-434.

[3] *Id*. §§ 1381-1383f.

[4] ECF No. 28.

arguments from the hearing, and the Commissioner's notice of supplemental authority filed on January 4, 2021.[5] Now being fully advised, the court renders the instant Memorandum Decision and Order. Based upon the analysis set forth below, the Commissioner's decision is reversed and remanded.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. Sometime in mid-2016, Plaintiff applied for DIB and SSI.[6] Plaintiff's applications were denied initially and upon reconsideration.[7] In November 2016, Plaintiff requested a hearing an Administrative Law Judge ("ALJ"),[8] which occurred on July 16, 2018.[9] The ALJ issued a written decision on November 15, 2018 denying Plaintiff's claims for DIB and SSI.[10] November 26, 2019, the Appeals Council denied Plaintiff's request for review,[11] making the ALJ's decision final for purposes of judicial review.[12] On January 23, 2020, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[13]

---

[5] ECF No. 29.

[6] ECF No. 16, Administrative Record ("AR ___") 204-21.

[7] AR 94-97.

[8] AR 147-48.

[9] AR 36-67.

[10] AR 11-30.

[11] AR 1-8.

[12] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[13] ECF No. 2.

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[14]  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[15]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."[16]  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[17]  "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[18]

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[19]  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[20]

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits

---

[14] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[15] 42 U.S.C. § 405(g).

[16] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[17] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[18] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

[19] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[20] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

. . . .

Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .[21]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work."[22] "If the claimant is able to perform [her] previous work, [she] is not disabled."[23] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[24]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[25] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

---

[21] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii).

[22] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[23] *Williams*, 844 F.2d at 751.

[24] *Id*.

[25] *Id*.

4

"whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[26] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[27] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[28]

## ANALYSIS

Plaintiff claims that the ALJ erred by: (I) misinterpreting statements regarding the effectiveness of Plaintiff's mental health medications; and (II) failing to consider whether work exists in significant numbers in the national economy that Plaintiff can perform. The court addresses each argument in turn below. Based upon the following analysis, the court concludes that Plaintiff's first argument fails, but her second argument requires reversal and remand.

**I.    The ALJ Did Not Err in Interpreting Statements Regarding the Effectiveness of Plaintiff's Mental Health Medications.**

The ALJ did not misinterpret statements regarding Plaintiff's mental health treatment. Plaintiff argues that the ALJ erred in determining that Plaintiff's "anxiety and mood symptoms were adequately managed by medications" and "manageable with medications."[29] Specifically, Plaintiff contends that the ALJ misinterpreted his four citations to certain treatment notes in the record to support those determinations. Plaintiff's argument fails because: (1) the court cannot

---

[26] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[27] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[28] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[29] AR 21.

5

reconsider the weight of the evidence before the ALJ and (2) the ALJ's determination is supported by substantial evidence. The court discusses each reason in turn below.

      First, on appellate review, the court will not and cannot substitute its judgment for the ALJ's in terms of weighing the evidence. Indeed, Plaintiff does nothing more than provide her own interpretation of the meaning of the treatment notes the ALJ cited. The court declines to reconsider the weight of the evidence before the ALJ by adopting Plaintiff's interpretation thereof.[30] From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.[31]

      Second, the ALJ's determination is supported by substantial evidence in the record. Indeed, Plaintiff ignores other evidence, including information in the treatment notes the ALJ cited, indicating that despite her anxiety and mood complaints, she exhibited unremarkable symptoms for mood, affect, thought process, behavior, and functioning.[32] She also showed normal mood and affect; coherent and logical thought processes; logical reasoning; congruent associations; normal judgment and insight; and no difficulty with attention span, concentration,

---

[30] *Madrid*, 447 F.3d at 790.

[31] *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[32] AR 374, 376, 378, 379-80.

or memory.[33]  Additionally, examining psychologist Tanya Colledge, Psy.D., opined that Plaintiff had unimpaired memory; adequate attention and concentration; unimpaired abstract reasoning, judgment, and insight; and the ability to provide practical solutions to everyday problems.[34]  Importantly, the ALJ gave significant weight to that opinion,[35] and Plaintiff has not challenged that determination.  For those reasons, the ALJ's determination on this issue is supported by substantial evidence.  Therefore, Plaintiff's first argument fails.

**II.     The Court Must Reverse and Remand to Allow the ALJ to Consider Whether Work Exists in Significant Numbers in the National Economy That Plaintiff Can Perform.**

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the jobs of Addresser, with approximately 25,000 jobs available in the national economy, and Food and Beverage Order Clerk, with approximately 9,500 jobs available in the national economy.[36]  The ALJ also concluded that those numbers together constituted work that exists in significant numbers in the national economy.[37]

Plaintiff contends that the ALJ should not have considered the job of Food and Beverage Order Clerk because it requires a reasoning level of three under the Dictionary of Occupational Titles, which is inconsistent with the ALJ determination that Plaintiff was limited to simple,

---

[33] AR 396, 503, 506, 510, 721-22.

[34] AR 477.

[35] AR 22.

[36] AR 24.

[37] *Id*.

unskilled work.³⁸  At oral argument, the Commissioner conceded that, under precedent from the Tenth Circuit and this court, the ALJ should not have considered that job.  Accordingly, the parties' arguments on this issue focus on whether the Commissioner's decision should be reversed and remanded to allow the ALJ to consider whether the job of Addresser, standing alone, provides work that exists in significant numbers in the national economy that Plaintiff can perform.³⁹  Plaintiff contends that the Commissioner's decision must be reversed and remanded for the ALJ to make that determination.  The Commissioner, on the other hand, argues that this court can apply a harmless error analysis and supply that dispositive finding.  For the following reasons, the court agrees with Plaintiff and concludes that the Commissioner's decision must be reversed and remanded.

Under the relevant statutes governing DIB and SSI, a claimant is disabled if, *inter alia*, she cannot perform "work which exists in the national economy."⁴⁰  That phrase "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."⁴¹  When interpreting that phrase, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'"⁴²

---

³⁸ *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Tamara C. v. Saul*, No. 1:18-CV-00118-CMR, 2020 WL 1276579, at *3 (D. Utah Mar. 17, 2020).

³⁹ Although Plaintiff initially argued that the ALJ should have not considered the job of Addresser, she conceded at oral argument that it was proper for the ALJ to do so.

⁴⁰ 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

⁴¹ 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

⁴² *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

Indeed, the Tenth Circuit has clearly held "that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'"[43] The factors that an ALJ should consider when making that evaluation include "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work."[44]

Where, as here, an ALJ erroneously considers a job or jobs in reaching the determination that there are a significant number of jobs, the reviewing court generally should not supply that dispositive finding but, instead, should reverse and remand to allow the ALJ to make that determination.[45] However, in certain situations, it may be appropriate for the reviewing court to apply harmless error. In *Allen*, the Tenth Circuit indicated that harmless error may be applied "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider

---

[43] *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar*, 966 F.2d at 1330).

[44] *Trimiar*, 966 F.2d at 1330 (quotations and citations omitted); *see also Allen*, 357 F.3d at 1144.

[45] *See, e.g.*, *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) (reversing and remanding where the ALJ improperly considered two of three jobs because "the ALJ did not have an opportunity to evaluate whether the [remaining] job, standing alone, existed in significant numbers under the statute" (citing *Allen*, 357 F.3d at 1144); *Allen*, 357 F.3d at 1144 (reversing and remanding where the ALJ erroneously considered one occupation with 800 jobs in determining whether a significant number of jobs existed because the ALJ "never had occasion to decide if the one hundred . . . jobs [for the other occupation] alone constituted a significant number under the statute" and noting that the court is "not in a position to draw factual conclusions on behalf of the ALJ" (quotations and citation omitted)).

(just not properly), [the reviewing court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[46] At the same time, the *Allen* court indicated that "[t]wo considerations counsel a cautious, if not skeptical, reception to" the application of harmless error in this context.[47]

> First, if too liberally embraced, it could obscure the important institutional boundary . . . that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . .[48]

Although harmless error should be applied cautiously, "there is no per se barrier to applying harmless error where . . . an ALJ erroneously included one or more jobs and is left with the remaining jobs a claimant can perform with her [RFC]."[49] The Tenth Circuit has "held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy."[50] The Tenth Circuit has also stated that while there is no bright-line rule for how many jobs constitutes a significant number, "the number appears to be somewhere between 100, the number of jobs in *Allen* that [the Tenth Circuit]

---

[46] *Allen*, 357 F.3d at 1145.

[47] *Id*.

[48] *Id*.

[49] *Evans v. Colvin*, 640 F. App'x 731, 735-36 (10th Cir. 2016)

[50] *Id*. at 736 (citing *Bainbridge v. Colvin*, 618 F. App'x 384, 391-92 (10th Cir. 2015) (500,000 jobs); *Shockley v. Colvin*, 564 F. App'x 935, 940-41 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (212,000 jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs)).

refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs [the Tenth Circuit has] considered (in *Stokes*) to be sufficient so far for application of harmless error."[51]

Turning to this case with those principles in mind, the court finds *Chavez* to be particularly instructive. In that case, the district court affirmed the Commissioner's denial of the plaintiff's application for SSI, and the plaintiff appealed that decision to the Tenth Circuit.[52] At the administrative level, the ALJ determined that the plaintiff could perform three jobs.[53] However, on appeal to the Tenth Circuit, the Commissioner conceded that two of those jobs conflicted with the definitions in the Dictionary of Occupational Titles.[54] Therefore, only one job remained that the ALJ properly considered, and the vocational expert testified that there were 49,957 of those jobs nationally and 199 in the region.[55] The court "decline[d] the Commissioner's invitation to find harmless error on the ground that the number of jobs [was] significant as a matter of law" and reversed the district court's decision.[56] The court reversed and remanded "because the ALJ did not have an opportunity to evaluate whether the [sole remaining] job, standing alone, existed in significant numbers under the statute. . . . 'Thus, he did

---

[51] *Id*.

[52] *Chavez,* 126 F. App'x at 435.

[53] *Id*. at 436.

[54] *Id*.

[55] *Id*.

[56] *Id*.

not give explicit consideration to the factors this court has recognized should guide the ALJ's commonsense judgment.'"[57]

Under the foregoing authorities, and considering the numbers at issue in *Chavez*, the court rejects the Commissioner's harmless error argument here, where there are significantly fewer jobs available. Consistent with *Chavez*—which declined to find harmless error where 49,957 jobs were available in the national economy—the court is not convinced that the approximately 25,000 jobs available in the national economy for the job of Addresser presents a situation where no reasonable administrative finder of fact would conclude that the number is not significant. Therefore, as in *Chavez*, the court cannot conclude on appeal that 25,000 jobs is a sufficient number to apply a harmless error standard to the ALJ's failure to find whether the occupation of Addresser presents a significant number of jobs in the national economy. Thus, the court must reverse and remand to allow the ALJ to make that determination in the first instance.[58]

---

[57] *Id*. (quoting *Allen*, 357 F.3d at 1144).

[58] In advancing his harmless error argument, the Commissioner relies primarily upon two cases, neither of which the court finds controlling or persuasive. First, the Commissioner cites to *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), for the proposition that the Tenth Circuit has suggested that as few as 11,000 jobs in the national economy constitutes a significant number of jobs. Although the *Rogers* court did make that suggestion or implication, it was in dicta. *Id*. at 142. Moreover, the *Rogers* court was not considering harmless error and was not addressing whether 11,000 jobs constituted a significant number under the relevant statutes. As such, *Rogers* is neither controlling nor persuasive here. Second, the Commissioner relies upon *Garcia v. Saul*, No. 18-CV-00917-REB, 2019 WL 3802105 (D. Colo. Aug. 13, 2019). The *Garcia* court concluded that 24,000 jobs nationally "undoubtedly [was] more than sufficient to meet the Commissioner's burden" of demonstrating a significant number of jobs. *Id*. at *4. Given the Tenth Circuit precedent cited and relied upon above, including *Chavez*, the court does not view *Garcia* as persuasive. The legal fact is that Congress delegated these fact-intensive applications of the statutes that the Commissioner administers to the Commissioner. Out of respect for the

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED AND REMANDED for the sole purpose of allowing the ALJ to consider whether the job of Addresser, standing alone, provides work that exists in significant numbers in the national economy that Plaintiff can perform.

IT IS SO ORDERED.

DATED March 19, 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

Legislative Branch's lawful delegation of authority to the Executive Branch, the Judicial Branch must exercise restraint and not usurp the Executive Branch's role by finding facts instead of merely reviewing them. *Cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984) ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones . . . .").